**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MONIQUE CHANTAE SINGLETON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 3:12-CV-00821-BF** |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **COMMISSIONER OF THE** | § | |
| **SOCIAL SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

This is an appeal from the decision of the Commissioner of the Social Security Administration ("the Commissioner") denying the claims of Monique C. Singleton ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423, and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382. The Court considered Plaintiff's Brief, Defendant's Brief, and Plaintiff's Reply Brief. The Court reviewed the record in connection with the pleadings. For the following reasons, the final decision of the Commissioner is REVERSED and REMANDED.

### Background[1]

### Procedural History

Plaintiff applied for DIB and SSI on August 6, 2009, alleging disability due to Crohn's disease beginning June 16, 2008. (Tr. 118-21,122-24, 132.) Plaintiff's applications were denied initially and upon reconsideration. (Tr. 53-60, 63-68.)

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

Plaintiff requested a hearing, which the Administrative Law Judge ("ALJ") held on June 2, 2010. (Tr. 33-48.)  Plaintiff, represented by counsel, testified at the hearing along with a vocational expert ("VE"). (Tr. 33-48.)  The ALJ issued an unfavorable decision denying Plaintiff's claims on July 30, 2010.[2] (Tr. 19-28.)

Plaintiff requested review from the Appeals Council on September 2, 2010. (Tr. 14.)  On January 20, 2012, the Appeals Council declined to review Plaintiff's claim, finding no basis upon which to overturn the ALJ's decision.  (Tr. 1-6.)  Thus, the ALJ's decision became the final decision of the Commissioner from which Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

### Plaintiff's Age, Education, and Work Experience

Plaintiff was born on July 24, 1979, and was 28 years old on her alleged onset date, June 16, 2008.  (Tr. 118.)  She is a high school graduate.  (Tr. 37.)  Her past relevant work was as an office clerk and a cafeteria attendant.  (Tr. 45.)  Plaintiff was last employed in June of 2008. (Tr. 133.)

### Plaintiff's Medical Evidence

On November 22, 2006, Dr. Grossman began treating Plaintiff for complaints of constipation and abdominal pain with a history of peptic ulcer disease. (Tr. 488.)  At the time of the consultation, Plaintiff was taking Nexium. *(Id.)* On December 13, 2006, Plaintiff noted that her constipation had improved and that she felt no pain. (Tr. 487.)  Plaintiff underwent an Upper GI endoscopy on December 20, 2006, revealing gastritis and heartburn. (Tr. 490.)

On May 24, 2008, Plaintiff was admitted to the JFK Medical Center complaining of rectal bleeding and mild abdominal pain. (Tr. 528.)  On May 28, 2008, Plaintiff underwent a terminal

---

[2]Both Plaintiff and the Commissioner incorrectly stated in their briefs that the ALJ's decision was issued on June 30, 2010, when it was actually issued on July 30, 2010. (Tr. 1, 28.)

ileum biopsy, which revealed ulceration and architectural distortion of the glands, compatible with Crohn's disease. (Tr. 525.)  On May 29, 2008, a small bowel series indicated evidence of terminal ileitis, which reflects either Crohn's disease or infectious etiology. (Tr. 534.)

Dr. Grossman diagnosed Plaintiff with Crohn's disease on June 11, 2008. (Tr. 484.) Plaintiff was prescribed Asacol for her Crohn's disease, but she reported pain from taking the medication. (Tr. 483, 484.) On October 3, 2008, Plaintiff reported averaging one bowel movement every two to three days. (Tr. 483.)  A small bowel series dated October 8, 2008 showed abnormalities of the terminal ileum consistent with Crohn's disease. (Tr. 492.)  On October 20, 2008, Plaintiff reported daily pain and intolerance to Asacol. (Tr. 482.)  Plaintiff was prescribed Lialda for her Crohn's disease. (*Id.*)

Plaintiff was admitted to the hospital with abdominal pain from August 3, 2009 until August 5, 2009. (Tr. 209.)  A CT scan showed inflammatory changes of the terminal ileum as well as 2 segments of the distal ileum suggestive of inflammatory bowel disease. (*Id.*)  A colonoscopy was also performed at this time, showing ileocecal valve stricture. (*Id.*)  Plaintiff was also found to be anemic. (*Id.*)  A blood test from August 2, 2009 showed a serum albumin level of 4.4 g/dL. (Tr. 230.) A biopsy of the terminal ileum showed chronic active ileitis. (Tr. 236.)  At the time of discharge, Plaintiff reported that she was feeling much better after receiving steroids while at the hospital. (Tr. 216.)  Her medications for her Crohn's disease and anemia were Pentasa, cipro, flagyl, compazine spansules, and iron sulfate. (Tr. 209.)  A CT scan on August 21, 2009 showed interval mild decrease in inflammatory changes involving the terminal ileal loop and partial small bowel obstruction. (Tr. 442.)

Plaintiff was readmitted to the hospital on August 22, 2009 with complaints of abdominal pain, nausea, and generalized weakness. (Tr. 477.)  She had been taking pentasa, compazine, and

iron sulfate. *(Id.)* Plaintiff had a hemoglobin level of 8.9 g/dL. (Tr. 430.) Blood tests performed on August 21 through August 23, 2009 showed serum albumin levels of 4.3 g/dL, 3.4 g/dL, and 3.5 g/dL. (Tr. 431.) She was discharged on August 24, 2009 and diagnosed with Crohn's disease exacerbation. (Tr. 405.) Plaintiff later received a CT scan of the abdomen and pelvis on September 7, 2009, showing evidence of a partial small bowel obstruction. (Tr. 469.) Another CT scan of the pelvis on September 9, 2009 showed a segment of small bowel wall thickening. (Tr. 507.)

Plaintiff was again admitted to the hospital on November 10, 2009, complaining of abdominal pain and a dry consistent cough. (Tr. 265.) A physical exam by the physician was positive for nausea and vomiting, but negative for abdominal pain, diarrhea and constipation. (Tr. 266.) Plaintiff was prescribed Norco, Levaquin, Flagyl, and Phenergan for the pain. (Tr. 268.) She was discharged with a diagnosis of exacerbation of Crohn's disease. *(Id.)*

Plaintiff was readmitted to the hospital on November 28, 2009, complaining of abdominal pain, nausea, vomiting, and neck pain that radiated down her right arm. (Tr. 271, 273.) A CT scan of the abdomen showed a 10 centimeter section of active Crohn's disease in the distal ileum with associated bowel obstruction. (Tr. 271, 318.) However, an exam the next day showed no residual small bowel obstruction. (Tr. 322.) A blood test on November 27, 2009, showed a serum albumin level of 3.5 g/dL (Tr. 309), while a blood test performed the next day showed a serum albumin level of 2.6 g/dL. (Tr. 277, 309.) On November 28, 2009, her hemoglobin was measured at 8.5 g/dL. (Tr. 279.) Plaintiff improved gradually after she was treated with steroids, IV antibiotics and pain medications. *(Id.)* A physical exam by the physician was positive for abdominal pain, but negative for nausea, vomiting, and diarrhea. (Tr. 289.) Dr. Siadati strongly recommended Plaintiff undergo a NG decompression, which Plaintiff refused. (Tr. 281.) She was discharged on December 2, 2009

4

in stable condition with a diagnosis of Crohn's disease, hypertension, iron deficiency anemia likely due to chronic blood loss from GI tract, and neck pain likely due to muscle spasms. *(Id.)* She was prescribed Flexeril, Colace, Feosol, Norco, Flagyl, Donnatal, Prednisone, and Phenergan. (Tr. 271-72.)

Plaintiff was readmitted to the hospital on January 20, 2010 with complaints of abdominal pain and vomiting. (Tr. 555.) A CT scan of the pelvis revealed small bowel obstruction and multiple moderate to severely dilated small bowel loops. (Tr. 559.) She was diagnosed with small bowel obstruction, Crohn's disease, hypertension, and urinary tract infection. (Tr. 563.) A blood test on January 22, 2010 showed a hemoglobin level of 9.3 g/dL and a serum albumin level of 3.0 g/dL. (Tr. 540-41.) However, blood tests on January 20, 2010 and January 21, 2010, revealed higher serum albumin levels of 3.4 g/dL and 3.3 g/dL. (Tr. 541.) Plaintiff was prescribed Lioresal, Cipro, and Flagyl. (Tr. 568-69.) She was discharged on January 22, 2010 on a regular diet. (Tr. 570-71.)

Plaintiff was again admitted to the hospital on March 29, 2010, complaining of fever, cramping, abdominal pain, and nausea. (Tr. 576.) She was started on IV steroids and fluids and improved within 24 hours. (Tr. 575.) Plaintiff had run out of her prednisone medication and stopped taking it before she began to feel abdominal pain and nausea. (Tr. 576.) Her last bowel movement was the day prior to her hospital stay. *(Id.)* Dr. Moster noted that Plaintiff had missed a previous appointment for an EGD and missed her follow up appointment in March of 2010. (Tr. 581.) She was diagnosed with Crohn's exacerbation, Leukocytosis, and hypertension. (Tr. 575.) Plaintiff was discharged on March 31, 2010 in stable condition and on a regular diet. *(Id.)* She was prescribed Imuran and Pepsid and she was told to continue taking cipro, Flagyl, prednisone, lioresal, feosol, microzide, norco, and pentasa. (Tr. 588-89.)

Dr. Bosworth, the Commissioner's consultative examiner, examined Plaintiff on October 6, 2009. (Tr. 251.)  Plaintiff reported having three stools per day and persistent abdominal cramping, frequent nausea and vomiting. *(Id.)*  Plaintiff also reported that she rarely goes to the grocery store because of her concern over her diarrhea. *(Id.)*  Dr. Bosworth noted that Plaintiff had lost 30 pounds within the past year and her weight was stable. *(Id.)*  On January 14, 2010, another consultative examiner for the Commissioner, Dr. Goodman, reviewed Plaintiff's medical records and stated that the allegations were not fully supported by the medical evidence or other evidence in the record. (Tr. 346.)

On March 9, 2010, Plaintiff's treating gastroenterologist, Dr. Eisner, noted that Plaintiff has frequent flares with her Crohn's disease that requires hospitalization. (Tr. 480.) Dr. Eisner opined that these hospitalizations have prevented Plaintiff from seeking gainful employment during the prior year. *(Id.)*

After the hearing with the ALJ, Plaintiff submitted new evidence, a medical opinion from Dr. Eisner, to the Appeals Council.  On June 14, 2010, Dr. Eisner noted in her medical opinion that Plaintiff's abdominal pain varies widely and could last for weeks up to months at a time. (Tr. 610.) Dr. Eisner also made the notation that Plaintiff suffers from anemia and chronic fatigue, requiring her to take unscheduled breaks to rest at unpredictable intervals during an 8-hour work day and requiring her to be absent from work 2 to 3 days per month. *(Id.)*  Dr. Eisner opined that as a result of Plaintiff's chronic symptoms, she continues to be disabled and would be unable to sustain and maintain any type of gainful employment on a consistent basis. *(Id.)*

### Plaintiff's Testimony at the Hearing

Plaintiff testified that she was last employed on June 16, 2008 doing clerical work. (Tr. 37.) She stated that she was no longer able to work because she was hospitalized, and her job needed her at work during the time she was in the hospital. *(Id.)* She said that she sees Dr. Eisner once or twice a month for her condition. (Tr. 38.) She stated that she has lost 30 to 40 pounds in the past year and she currently weighs 188 pounds. (Tr. 38-39.) Plaintiff testified that she is on a mostly liquid diet, and a low residue, low fiber diet. (Tr. 39.) She stated that she was diagnosed with Crohn's disease on May 29, 2008. *(Id.)* She testified that she has to go to the hospital once or twice every other month for two to five days each time because of the disease. (Tr. 39-40.) Plaintiff stated that she is currently taking Pentosin, Prednisone, Azathioprine, Hydrochlorothiazide, and Mirtazapine. (Tr. 40.)

Plaintiff testified that she is not able to work because she is constantly in pain and she is "always in and out of the doctor." (Tr. 41.) She described her abdominal pain as a six on a ten point scale. *(Id.)* She alleged that the pain was this bad every day. *(Id.)* Plaintiff stated that she can only stand or walk for 25 to 30 minutes before she needs to lay or sit down. *(Id.)* She stated that she can stand or walk again after taking a 15 to 25 minute break. (Tr. 42.) Plaintiff testified that the medication she is taking does not control the attacks. *(Id.)* She stated that the Crohn's disease makes it hard for her to sit down because she is always sore from constant, running diarrhea. *(Id.)* She testified that she could go to the bathroom four to five times in one hour. *(Id.)*

Plaintiff testified that due to her abdominal pain, her son does most of the cooking and chores around the house. (Tr. 44.) She stated that she can assist him for five to ten minutes, but then has to sit back down. *(Id.)*

**The Hearing**

Regarding Plaintiff's past relevant work, the VE testified that the exertional demands and the skill requirements of an office clerk are light and semiskilled, and that of a cafeteria attendant are light and unskilled. (Tr. 45.)  When asked what the allowable amount of absences an employee could take before suspendability of employment would become a problem, the VE testified that an employer generally will not tolerate someone who is absent from work more than one to two times per month on a consistent basis. (Tr. 46.)  He stated that suspendability would be a problem for an employee with chronic exacerbations that is in the hospital at least once to twice a month for two to five days. (*Id.*)  When asked if an employee's constant restroom breaks would affect their ability to perform any type of work, the VE stated that if an individual is spending more time in the restroom than on the job, it would affect their ability to perform any type of work. (*Id.*)  He testified that someone who needs to go to the bathroom five to six times per hour due to running bowels would not be able to stay on task long enough to complete their responsibilities. (*Id.*) The VE did not testify as to what type of work Plaintiff could perform.

**The Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 16, 2008. (Tr. 21.) At step two, the ALJ found that Plaintiff had the severe impairments of Crohn's disease and obesity. (*Id.*)  At step three, the ALJ found that Plaintiff did not meet or equal any listed impairment in Appendix 1 of the regulations and retained the RFC to perform the full range of sedentary work.[3] (Tr. 22-26.)  The ALJ then found at step four that Plaintiff was unable to

---

[3]  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is

perform any of her past relevant work. (Tr. 26.)  However, the ALJ used the Medical-Vocational Guidelines at step five to determine that Plaintiff retained the RFC to perform the full range of sedentary work and that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 27.) Thus, Plaintiff was found not disabled. *(Id.)*

## Standard of Review

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act.  *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled.  Those steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.  An individual who does not have a "severe impairment" will not be found to be disabled.

3.  An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.  If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

---

defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

5.      If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *(Id.)* Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Moreover, the terms of 20 C.F.R. § 404.1527 define "medical opinions" and instruct

10

claimants how the Commissioner will consider the opinions.[4]  In the Fifth Circuit, "the opinion of

the treating physician who is familiar with the claimant's impairments, treatments and responses,

should be accorded great weight in determining disability." *Newton*, 209 F.3d at 455; *see Floyd v.*

*Bowen,* 833 F.2d 529, 531 (5th Cir.1987).

## Issues

1.      Whether the ALJ Failed to Properly Consider if Plaintiff is *Per Se* Disabled Under Medical Listing 5.06.

2.      Whether the ALJ Failed to Follow the Treating Physician Rule.

3.      Whether the Appeals Council Failed to Properly Consider New and Material Evidence.

4.      Whether the ALJ Failed to Properly Evaluate Plaintiff's Credibility.

5.      Whether the ALJ Erred by Relying Upon the Medical-Vocational Guidelines.

## Analysis

**Whether the ALJ Failed to Properly Consider if Plaintiff is *Per Se* Disabled Under Medical**

**Listing 5.06.**

Plaintiff alleges that the ALJ failed to properly consider whether she met or equaled the

medical listing for Crohn's disease found in section 5.06. (Pl. Br. at 6.) A claimant can show that she

---

[4]  The terms of 20 C.F.R. § 404.1527(a)(2) provide:

(2) Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

is *per se* disabled if she meets or equals one of the listed impairments.  20 C.F.R. § 404.1520(d).

The requirements to prove disability due to Crohn's disease are found under listing 5.06:

> Inflammatory bowel disease (IBD) documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with:
>
> A.   Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6–month period;
>
> OR
>
> B.   Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6–month period:
>
> > 1.   Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or
> >
> > 2.   Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or
> >
> > 3.   Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
> >
> > 4.   Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
> >
> > 5.   Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or
> >
> > 6.   Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

20 C.F.R. pt. 404, subpt. P, app. 1, § 5.06.  "To meet the requirements of a listing, you must have

a medically determinable impairment(s) that satisfies all of the criteria in the listing."  20 C.F.R. §

404.1525(d).  The Supreme Court has explained, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  The Supreme Court further explained that the listings are set at a higher level of severity than the statutory standard, thus making it very difficult to meet this heightened standard. *Id.* at 532.  "The listings define impairments that would prevent an adult . . . from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.*

An impairment is "medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a)**.** Section 404.1526(b) gives three ways in which medical equivalence can be determined, but section one is the pertinent provision for Plaintiff:

> (1)(i) If you have an impairment that is described in appendix 1, but–
>
>> (A) You do not exhibit one or more of the findings specified in the particular listing, or
>>
>> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

20 C.F.R. § 404.1526(b).

If an ALJ comes to the conclusion that a claimant does not meet or equal any listed impairment, he is required to identify the listed impairment for which the claimant fails to qualify and to provide an explanation as to how he reached the conclusion that the claimant's symptoms are insufficiently severe to meet any listed impairment. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).  The ALJ is "required to discuss the evidence offered in support of [the claimant's] claim for

disability and to explain why [he] found [the claimant] not to be disabled at that step." *(Id.)* However, "the ALJ is not always required to do an exhaustive point-by-point discussion . . ." *(Id.)* In addition, the *Audler* Court held that "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *(Id.)*

Plaintiff concedes that she does not meet the requirements to be considered disabled under listing 5.06.  To be considered disabled, Plaintiff must meet at least two of the six criteria under section 5.06(B).  Plaintiff met the criteria listed under 5.06(B)(1) because she had anemia with hemoglobin levels below 10.0 g/dL on two separate evaluations at least 60 days apart. (Tr. 430, 279.) However, she did not meet any of the other five criteria under section 5.06(B).

Plaintiff, however, contends that she equals the requirements listed under section 5.06. (Pl. Br. at 7.)  She further claims remand is necessary under step 3 because the ALJ did not discuss all of the relevant findings in deciding that Plaintiff was not disabled. (Pl. Br. at 8-9.)  Plaintiff's contention has some merit; in the ALJ's opinion, he explained why Plaintiff did not meet the requirements of listing 5.06, but he did not address whether Plaintiff's impairments *equal* listing 5.06. (Tr. 22.)  The ALJ should have discussed the evidence Plaintiff offered in support of her claim that she equaled listing 5.06.  However, according to the *Audler* Court, procedural perfection is not required unless the substantial rights of a party have been affected. *Audler*, 501 F.3d at 448.  Thus, even though the ALJ erred in not discussing whether Plaintiff's impairments equaled listing 5.06, this Court must still determine whether this error was harmless. *(See id.)*

Section 404.1526(b) describes three different ways to determine whether Plaintiff's ailments are medically equivalent to a listed impairment. Plaintiff's situation falls under section 404.1526(b)(1) because her impairment, Crohn's disease, is an impairment that is described in Appendix 1, under section 5.06, and Plaintiff does not exhibit one or more of the findings specified

in the listing. *See* 20 C.F.R. § 404.1526(b)(1). Paragraphs 2 and 3 of 404.1526(b) do not apply to Plaintiff because her impairment or combination of impairments are described in the listings in Appendix 1 under section 5.06, thus there would be no reason to compare her impairments with a closely analogous listed impairment. *See* 20 C.F.R. § 404.1526(b)(2)-(b)(3). In addition, Plaintiff has not suggested that she meets or equals any other closely analogous listing. Therefore, to determine if Plaintiff has impairments that equal the requirements under section 5.06, Plaintiff must exhibit "other findings related to [her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. 404.1526(b)(1)(ii).

Plaintiff contends that she equals the requirements under section 5.06 because she has multiple ailments that "almost completely satisfy" the listing requirements. (Pl. Br. at 9.) Her serum albumin levels were at or below 3.0 g/dL 55 days apart, five days short of the required 60 days. (Pl. Br. at 7.) She further claims that it is relevant that no later serum albumin test in the record shows that her levels improved. *(Id.)* Plaintiff next contends that her weight loss of 30 to 40 pounds over the course of a year, instead of the required 60 days, combined with her low serum albumin levels, equals the listing. (Pl. Br. at 8.) And finally, Plaintiff contends that she almost meets the requirement of showing a tender abdominal mass palpable on physical examination because she has unrelieved chronic abdominal pain while on narcotics. *(Id.)*

Plaintiff has failed to show that she equals the listing under section 5.06. To equal the listing, Plaintiff is required to show other findings that are at least of equal significance to the required criteria. Regarding her first argument, Plaintiff has only shown that she almost met the serum albumin requirement with no further findings which were at least as medically significant as the listing. (Pl. Br. at 7.) She was only able to show that she had low levels of serum albumin twice within a 55 day period. *(Id.)* Plaintiff claims that this should equal the listing because no later

15

albumin test in the record showed that her levels improved. (Pl. Br. at 7.)  However, this argument

is disingenuous because Plaintiff fails to mention that there were no later albumin tests in the record.

Moreover, even if there were more albumin tests in the record, it is just as likely that those tests

would have shown an improvement in her albumin levels considering Plaintiff had multiple albumin

tests that were within normal range or near the normal range during the time period of August 22,

2009 to January 21, 2010.  (Tr. 309, 431, 541.)  Plaintiff fails to present any additional findings

which would be as medically significant as the listing, thus she does not equal the Listing under her

first argument.

Plaintiff's next argument, that her weight loss over the course of a year equals the listing in

combination with the other findings, fails as well.  Losing 30 to 40 pounds in one year is drastically

different than losing 10% body weight in a 60 day period.  Thus her weight loss over the course of

the year is not as medically significant as 10% weight loss over the course of 60 days, even in

combination with the other findings.  Plaintiff next states that she almost meets the criteria because

she has abdominal pain and cramping that has not been relieved with narcotic medications. (Pl. Br.

at 8.)  In addition to the pain and cramping, the listing requires clinically documented tender

abdominal mass palpable on physical examination present on at least two examinations at least 60

days apart. 20 C.F.R. pt. 404, subpt. P, app. 1, § 5.06(B)(3).  Plaintiff never had a tender abdominal

mass palpable on physical examination, nor does she provide any other findings which would be as

medically significant as such.

Plaintiff has failed to meet her burden that she exhibits "other findings related to [her]

impairment that are at least of equal medical significance to the required criteria." 20 C.F.R.

404.1526(b)(1)(ii).  Plaintiff only showed that she had some findings that were not as severe as

specified in the listing.  However, she failed to present any additional findings or evidence which

were as significant as the requirements in the listing.  Thus, Plaintiff did not equal the requirements

under section 5.06 and cannot be considered *per se* disabled under step 3 of the inquiry.  Although

the ALJ did not discuss why Plaintiff's impairments did not *equal* listing 5.06, this was a harmless

error because Plaintiff's substantial rights were not affected.  Therefore, remand is not necessary

under step 3 of the analysis.

**Whether the ALJ Failed to Follow the Treating Physician Rule.**

Plaintiff alleges that the ALJ failed to give proper weight to her treating physician's opinion.

(Pl.'s Br. at 9.)  The opinion of a treating physician who is familiar with the claimant's impairments,

treatments, and responses should be accorded great weight in determining disability.  *See Newton,*

209 F.3d at 455 (citing *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237).  A treating physician's

opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is

well supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2).  In

many cases, a treating physician's opinion is entitled to the greatest weight and should be adopted,

even if it does not meet the test for controlling weight.  *See* SSR 96-2p.  On the other hand "[g]ood

cause may permit an ALJ to discount the weight of a treating physician relative to other experts

where the treating physician's evidence is conclusory, is unsupported by medically acceptable

clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."  *Newton*,

209 F.3d at 456.  If good cause is shown, then the ALJ may accord the treating physician's opinion

less weight, little weight, or even no weight.  *Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir. 1995).

If the ALJ does not accord a treating physician's opinion controlling weight, and in making

such decision, does not rely on conflicting medical evidence from another treating or examining

physician, then the ALJ must perform a detailed analysis of the treating physician's opinion under

the criteria set forth in  20 C.F.R. § 404.1527(c)(2). *Newton*, 209 F.3d at 453. The criteria set forth in 20 C.F.R. § 404.1527(c)(2) include: "(1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician." *Id.* at 456 (citing 20 C.F.R. § 404.1527(c)).  Further, the reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  The ALJ must explain the weighing in the decision, and the weight will stand or fall on the reasons set forth in the opinion. *Id*. at 455.

Plaintiff's treating physician, Dr. Eisner, gave a medical opinion that Plaintiff was unable to seek gainful employment due to her frequent flares requiring hospitalization. (Tr. 480.)  The ALJ found that Dr. Eisner's opinion regarding the severity of her Crohn's disease was supported by medically acceptable clinical and laboratory diagnostic techniques. (Tr. 26.)   However, he determined that Dr. Eisner's statement that Plaintiff was unable to seek gainful employment due to the frequent flares and hospitalizations was inconsistent with the objective medical evidence, and thus he gave it little weight. *(Id.)*

Because Dr. Eisner is Plaintiff's treating physician, her opinion should have been given great weight, unless the ALJ found good cause to discount her medical opinion with specific reasons for doing so.  The ALJ, however, did not give clear, specific reasoning as to why he only gave part of Dr. Eisner's opinion great weight.  The ALJ did not explain how or why Dr. Eisner's opinion was inconsistent with the objective evidence.  He only gave a summary of Plaintiff's medical evidence and then gave a conclusory statement that Dr. Eisner's opinion was inconsistent with the evidence. (Tr. 22-26.) Moreover, the ALJ did not provide any conflicting evidence from another treating or

examining physician.  In fact, he gave both state agency medical opinions little weight because he found that they were inconsistent with the medical evidence. (Tr. 26.)  Thus, the ALJ was required to give a detailed analysis of the treating physician's opinion.  However, the ALJ did not give any analysis as to why he discounted the treating physician's medical opinion.

While it is true that doctors cannot opine on the ultimate determination of disability, the ALJ failed to explain how Plaintiff's frequent flares and hospitalizations were not supported by the evidence in the record. This Court finds quite the opposite is true. Plaintiff was hospitalized on May 24, 2008, complaining of rectal bleeding and mild abdominal pain.  On May 28, 2008, she underwent a terminal ileum biopsy, which revealed ailments compatible with Crohn's disease.  On May 29, 2008, a small bowel series indicated evidence of terminal ileitis, which reflects either Crohn's disease or infectious etiology.  A small bowel series performed on October 8, 2008, revealed abnormalities of the terminal ileum consistent with Crohn's disease.

Plaintiff was readmitted to the hospital from August 3, 2009 until August 5, 2009.  A CT scan performed during this hospital stay showed inflammatory changes of the terminal ileum as well as 2 segments of the distal ileum suggestive of inflammatory bowel disease.  A colonoscopy showed that Plaintiff suffered from ileocecal valve stricture.  In addition, Plaintiff was found to be anemic.

Plaintiff was again admitted to the hospital on August 22, 2009 until August 24, 2009 with a diagnosis of Crohn's disease exacerbation.  CT scans on September 7, 2009 and September 9, 2009 revealed partial small bowel obstruction and small bowel wall thickening. Plaintiff was readmitted to the hospital on November 10, 2009 with a diagnosis of Crohn's disease exacerbation.

Plaintiff was readmitted to the hospital from November 28, 2009 until December 2, 2009, complaining of abdominal pain, nausea, vomiting, and neck pain. A CT scan during this hospital stay revealed a 10 centimeter section of active Crohn's disease in the distal ileum with associated bowel

obstruction.  She was diagnosed with Crohn's disease, hypertension, iron deficiency anemia likely

due to chronic blood loss from GI tract, and neck pain likely due to muscle spasms.

Plaintiff was readmitted to the hospital from January 20, 2010 until January 22, 2010. A CT

scan revealed small bowel obstruction and multiple moderate to severely dilated small bowel loops.

She was diagnosed with small bowel obstruction, Crohn's disease, hypertension, and urinary tract

infection. Plaintiff was then readmitted to the hospital from March 29, 2010 until March 31, 2010.

She was diagnosed with Crohn's exacerbation, Leukocytosis, and hypertension.  The record is replete

with evidence of Plaintiff's hospitalizations, and without a detailed explanation from the ALJ, the

record appears to support Dr. Eisner's opinion.

In sum, the Court finds that the ALJ committed legal error by failing to properly weigh the

treating physician's opinion. Moreover, the Court finds that the ALJ committed legal error by failing

to consider the factors set forth in the Commissioner's regulations for evaluating treating physician's

opinions. The error is not harmless because if the ALJ had given more weight to the treating

physician's opinion, he may have found Plaintiff disabled. Dr. Eisner opined that Plaintiff would not

be able to seek gainful employment due to the frequent flares of her Crohn's disease and resulting

hospitalizations. At the hearing, the VE testified that a person with chronic exacerbations and

monthly hospitalizations may have difficulty sustaining employment. Thus, Plaintiff has shown

prejudice from the ALJ's failure to properly weigh her treating source's opinion and remand is

required.

**Whether the Appeals Council Failed to Properly Consider New and Material Evidence**

Plaintiff alleges that the Appeals Council failed to meaningfully address new and material

evidence presented after the decision by the ALJ, thus requiring remand. (Pl. Br. at 12.) The Fifth

Circuit has held that "evidence submitted for the first time to the Appeals Council is part of the

record on appeal because the statute itself provides that such record includes the 'evidence upon which the findings and decision complained of are based.'" *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

The Act provides, "[w]hen the Appeals Council makes a decision, it will follow the same rules for considering opinion evidence as administrative law judges follow." 20 C.F.R. § 404.1527(e)(3); *Green v. Astrue*, No. 3:07-CV-0291-L, 2008 WL 3152990, at *7 (N.D. Tex. July 30, 2008). However, the Appeals Council is only required to review additional evidence if it is "new and material." 20 C.F.R. § 404.970(b). For new evidence to be considered material, there must exist "the reasonable possibility that it would have changed the outcome of the Secretary's determination." *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994). Additionally, to be considered material, the evidence must "relate to the time period for which benefits were denied." *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985). Evidence of a later-acquired disability or a subsequent deterioration of a non-disabling condition is not material. *Id.*

Plaintiff submitted a letter dated June 14, 2010 from her treating physician, Dr. Eisner, to the Appeals Council. (Tr. 610.) The Appeals Council considered the new evidence, but found that it did not "provide a basis for changing the Administrative Law Judge's decision." (Tr. 1.) The Appeals Council subsequently denied Plaintiff's request for review, and the new evidence became a part of the record upon which the Commissioner's final decision was based. *See Higginbotham*, 405 F.3d at 337. A court considering that final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. *Higginbotham v. Barnhart*, 163 F.App'x 279, 281-82 (5th Cir. 2006).

21

The additional evidence consists of another opinion of Dr. Eisner, Plaintiff's treating physician. In her June 14, 2010 medical opinion, Dr. Eisner lists limitations that were previously unavailable in the record.  She stated that Plaintiff's pain in her abdominal region "varies widely and could last for weeks up to months at a time," and that it can occur multiple times per month or not at all for a few months at a time. (Tr. 610.)  She also noted that because of Plaintiff's anemia, she suffers from chronic fatigue and occasionally needs to "take unscheduled breaks to rest at unpredictable intervals during an 8-hour working day and will be absent from work 2-3 days a month." *(Id.)*  This Court finds that the evidence is new and material because it relates to the time period for which benefits were denied, it does not concern a later acquired disability or a subsequent deterioration of a non-disabling condition, and there exists a reasonable possibility that it would have changed the outcome of the Commissioner's determination. Thus, Plaintiff rightfully submitted this evidence to the Appeals Council.

Because this Court has found remand necessary for the ALJ to follow the treating physician rule, and the new evidence consists of another opinion of the treating physician, this Court cannot say with certainty whether or not the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. Upon remand, the ALJ should consider this new evidence as well.

The Court finds that the ALJ's legal errors in considering the medical evidence will necessarily require reconsideration, not only of the medical evidence, but of the remaining issues as well.

**Conclusion**

For the foregoing reasons, this Court REVERSES the Commissioner's final decision and

REMANDS the case for reconsideration consistent with this Opinion.

SO ORDERED, April 15,  2013.



_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE